Randy SCHEINER, Royce Scheiner, Cindy Royce Creations, Inc. and Maximus Creations Limited, Plaintiffs,

v.

Derek WALLACE, Brian Daniels, Paul Hunt, and David Williams, sued on their own behalf and on behalf of all other Lloyd's Underwriters subscribing to Policy Numbers ZJB8901346 251NM and ZJB900233 255M, White, Fleischner, Fino & Wade, Dennis Wade, Holmes Protection of New York, Inc., Hartley Cooper Associates, Ltd., Levmore–Finch, Inc., Graham Miller, Inc., Shaun Coyne, Karl Alizade, City Safe, Inc. and J.M. McNicholas, Defendants.

No. 93 Civ. 0062 (RWS).

United States District Court, S.D. New York.

Sept. 13, 1993.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City, for defendants Derek Wallace, Brian Daniels, Paul Hunt, David Williams, Lloyd's Underwriters, White, Fleischner, Fino & Wade, Graham Miller, Inc., Shaun Coyne, Karl Alizade, City Safe, Inc. and John M. McNicholas (Michael C. Silberberg, of counsel).

Nourse & Bowler, New York City, for defendant Hartley Cooper Associates, Ltd.

Lapidus & Frankel, P.A., Miami, FL (Robert P. Frankel, of counsel) and Hein Hazelberg, New York City, for plaintiffs.

### OPINION

SWEET, District Judge.

Defendants Derek Wallace, Brian Daniels, Paul Hunt, David Williams, Lloyd's Underwriters Subscribing to Policy Numbers ZJB8901346 251NM and ZJB900233 255M, ("Lloyd's"), White, Fleischner, Fino & Wade ("WFFW"), Holmes Protection of New York, Inc. ("Holmes"), Graham Miller, Inc. ("Miller"), Shaun Coyne, Karl Alizade, City Safe, Inc. ("City Safe") and Detective John M. McNicholas ("McNicholas"), (collectively the "Defendants") have moved for an order dismissing Plaintiffs Randy Scheiner's, Royce Scheiner's, Cindy Royce Creations, Inc.'s ("Cindy Royce"), and Maximus Creations Limited's ("Maximus"), (collectively the "Plaintiffs") Complaint, pursuant to Rule 12(b), Fed.R.Civ.P., or granting summary judgment against Plaintiffs' claims, pursuant to Rule 56, Fed.R.Civ.P.

Defendant Hartley Cooper Associates, Limited ("Hartley Cooper") separately moved for an order granting summary judgment pursuant to Rule 56 Fed.R.Civ.P. or dismissing all claims for lack of pendant jurisdiction.

For the reasons set forth below, the Defendants' motions are granted in part and denied in part.

### Parties

Plaintiff Cindy Royce is a New York corporation. Its principal office is in New York City and its primary business is manufacturing and selling jewelry.

Plaintiff Maximus is a New York corporation. Its principal office is in New York City and its primary business is manufacturing and selling jewelry.

Samuel Scheiner was and is Secretary/Treasurer and fifty-percent shareholder of Cindy Royce and Secretary/Treasurer and one-third owner of Maximus. Samuel Scheiner supervised the overall operations and finances of both Cindy Royce and Maximus.

Morton Gold was President and fifty-percent owner of Cindy Royce and Vice–President and one-third owner of Maximus. Gold supervised the jewelry manufacturing on the premises at 501 Madison Avenue.

Daniel Squillante was President and one-third owner of Maximus. Squillante supervised the overall operations of the Maximus line of jewelry.

Randy Scheiner is a New York citizen and resident residing in Cedarhurst, New York. He was a salesman for Maximus. He is the son of Samuel Scheiner and plaintiff Royce Scheiner.

Royce Scheiner is the wife of Samuel Scheiner.

Derek Wallace, Brian Daniels, Paul Hunt and David Williams are citizens of the United Kingdom, with their principal place of business in London. As Lloyd's underwriters, they subscribed to the insurance policies in this case.

WFFW, a law firm, is a general partnership organized and existing under the laws of the State of New York. Attorneys in WFFW are licensed to practice law in the State of New York. Dennis Wade is a partner in WFFW. Dennis Wade worked first as an Assistant District Attorney and second as Deputy Chief of the Rackets Bureau in the New York County District Attorney's Office.

Holmes is a corporation organized and existing under the laws of New York. Cindy Royce and Maximus contracted Holmes to provide security services.

Hartley Cooper, an insurance brokerage, is an English Corporation with its principal place of business in England. Hartley Cooper acted as a "placing broker" by placing primary and excess insurance policies for Cindy Royce and Maximus on the London market.

Levmore–Finch, an insurance brokerage, is a New York corporation with its principal place of business in New York City.

Graham Miller is an adjustment firm retained by Lloyd's. Shaun Coyne is a loss adjuster at Miller.

City Safe, a New Jersey corporation, has its principal place of business in New Jersey and New York. The firm provides safe expertise for Lloyd's. Karl Alizade is a principal of City Safe.

Detective McNicholas, formerly with the New York City Police Department, helped investigate the reported burglary of Cindy Royce and Maximus.

### Prior Proceedings

On January 7, 1990, Cindy Royce and Maximus initiated a civil suit in the English High Court of Justice, Queen's Bench Division, Commercial Court (the "English Action") against 106 Lloyd's underwriters. Mr. Justice Waller presided. In their "Points of Claim" (Complaint), Cindy Royce and Maximus alleged that Lloyd's' rejection of the Plaintiffs' Proof of Loss statement was a breach of contract on Jewelers Block Insurance Policies ZJB8901346 251NM and ZJB900233 255M. Plaintiffs sought $2,475,-000.00 and $2,500,000.00 per policy and interest.

On October 2, 1991, in the thirtieth day of the trial, Cindy Royce and Maximus applied to discontinue the English Action, provided they would not pursue their claims elsewhere with court ordered costs. Their application for discontinuance was denied. On October 3, 1991, the Plaintiffs' abandoned their claims and Mr. Justice Waller entered a dismissal for the Defendants.

Plaintiffs appealed Mr. Justice Waller's denial of discontinuance to the English Court of Appeal. Lord Donaldson upheld the denial of discontinuance and affirmed the dismissal in favor of the Defendants.

On March 25, 1992, Samuel Scheiner, Morton Gold, Daniel Squillante, Benoit Dreyfus, Randy Scheiner, Cindy Royce, and Maximus were indicted by the Grand Jury of the County of New York on three counts: (1) Conspiracy in the Fourth Degree, in violation of Penal Law Section 105.10(1); (2) Insurance Fraud in the First Degree, in violation of Penal Law Section 176.30; and (3) Attempted Grand Larceny in the First Degree, in violation of Penal Law Sections 110.00 and 155.42.

In a plea agreement entered into on October 16, 1992, all charges against Randy Scheiner, Cindy Royce and Maximus were dismissed. At the same time, Samuel Scheiner, Morton Gold and Daniel Squillante pled guilty to Attempted Grand Larceny in the Fourth Degree. As a result of a separate indictment, Daniel Squillante pled guilty to violating Tax Law Section 1804(b), failing to properly report his taxable income for the years 1986 through 1990.

Also in 1992, Cindy Royce and Maximus filed suit in the Southern District of New York against their English counsel, Simmons & Simmons. On July 27, 1993, Judge Patterson granted Simmons & Simmons' motion for summary judgment against Cindy Royce and Maximus' claims of professional malpractice, breach of contract, and violation of New York judiciary law section 487 and denied summary judgment on their claims of unjust enrichment. Judge Patterson also granted Simmons & Simmons' motion to dismiss pur-

suant to the doctrine of *forum non conveniens.*

On January 6, 1993, Plaintiffs Randy Scheiner, Royce Scheiner, Cindy Royce and Maximus filed this action against Defendants. In their complaint, the Plaintiffs allege the following:

(1) Lloyd's breached its contract for both the primary and excess policies;

(2) Lloyd's practiced deceptive business policies and acts proscribed by § 349 of the General Business Law of New York State;

(3) Defendants maliciously prosecuted Randy Scheiner, Cindy Royce ad Maximus for their personal unjust enrichment and benefit;

(4) Defendants intentionally inflicted emotional distress upon Randy Scheiner;

(5) Defendants intentionally inflicted emotional distress upon Royce Scheiner;

(6) Defendants initiated a criminal investigation of Randy Scheiner, Cindy Royce and Maximus constituting an abuse of process;

(7) Defendants violated RICO by engaging in a pattern of racketeering activity;

(8) Defendants Hartley Cooper and Levmore–Finch committed acts of negligence and malpractice by failing to perform their brokerage services according to generally accepted principles;

(9) Defendant Holmes breached its contract to protect the Plaintiffs' premises because other premises they protected were burglarized;

(10) Defendant Holmes defrauded Cindy Royce and Maximus by failing to provided contracted and paid for security devices; and

(11) Defendants violated Cindy Royce's and Maximus' civil rights under § 1983 by conspiring to commit perjury, tamper with evidence and to prevent Cindy Royce and Maximus from presenting truthful witnesses in violation of due process.

On March 9, 1993,[1] the collective Defendants filed a motion for summary judgment,

on the grounds of res judicata and/or collateral estoppel, as to all asserted claims or, in the alternative, a motion to dismiss all asserted claims for failure to state a claim and failure to plead two of the claims sounding in fraud, and requesting an order requiring Plaintiffs to post a security bond for $250,000.

On May 14, 1993, Defendants Hartley Cooper filed a separate motion for summary judgment as to all claims asserted against it on the grounds of collateral estoppel, or in the alternative, an order dismissing all claims against Hartley Cooper for lack of pendant jurisdiction.

Defendant Levmore–Finch did not answer or file motions to dismiss in this action.

Oral argument on the motions was heard on June 30, 1993 and the motions were considered fully submitted as of that date.

*Facts*

On January 5, 1989, underwriters from Lloyd's issued Jewelers' Block Policy No. ZJB8901346 251NM to Plaintiffs Cindy Royce and Maximus for a premium of $110,000.00. The policy insured Cindy Royce and Maximus for a period of 12 months, beginning July 10, 1989, against loss by theft up to a maximum of $2,500,000.00, with a $25,000.00 deductible. (Complaint ¶ 19). On February 9, 1989, Plaintiffs paid a $9,500.00 premium for an additional "excess policy" for losses in excess of $2,500,000.00. Both policies contained a "Service of Suit Clause," meaning the underwriters agreed to adjudicate claims before a court of competent jurisdiction in the United States, as well as a "False Swearing Clause."

On August 18, 1989, the premises of Cindy Royce and Maximus were reportedly burglarized. Both insurance policies were in effect at the time of the burglary. On November 2, 1989, Samuel Scheiner, in his capacity as Secretary/Treasurer for Cindy Royce and Maximus, filed a Proof of Loss with Lloyd's for more than $5 million.

---

**1.** Defendant Holmes joined the motion to dismiss filed originally by the Lloyd's, WFFW, Dennis Wade, Graham Miller, Shaun Coyne, Karl Ali-

zade, City Safe Inc. and Detective McNicholas on April 12, 1993. Hartley Cooper filed a separate motion on June 16, 1993.

Lloyd's rejected the Proof of Loss on December 18, 1989. (Complaint ¶ 23).

In January, 1990, Plaintiffs Cindy Royce and Maximus met with Mr. Philip Vaughn, a partner in the English law firm Simmons & Simmons, at Cindy Royce's New York office. Mr. Vaughn advised the Plaintiffs, and their New York attorney Mr. Fiore, that a law suit in London would take significantly less time than in New York.

On February 7, 1990, Cindy Royce and Maximus initiated the English Action alleging that Lloyd's' rejection of their Proof of Loss breached the contract. Lloyd's' "Amended Points of Defense" (the English Answer), alleged the following:

(1) a principal or employee of Cindy Royce and Maximus was dishonestly involved in the burglary, entitling the Underwriters to refuse to make payment under the false swearing clause;

(2) the Underwriters were entitled to reject the Proof of Loss because there was no burglary; the outer vault door was "torched" while in the open position and other physical evidence reasonably indicated that the theft was staged and perpetrated by someone on the inside with access to the premises, alarm system, safe and vault combinations;

(3) Samuel Scheiner, a principal of Cindy Royce and Maximus, was fraudulently involved with the burglary;

(4) Cindy Royce and Maximus breached the policies by failing to properly maintain a detailed and itemized inventory of their property;

(5) Cindy Royce and Maximus fraudulently inflated the amount of their claim;

(6) Cindy Royce and Maximus breached a condition of their policies by keeping inadequate records and;

(7) Cindy Royce and Maximus committed a variety of breaches of warranty, misrepresentations and nondisclosures, which entitled the Underwriters to avoid their policies.

The English trial began on April 23, 1991. The English Judge, Mr. Justice Waller, travelled to New York, visited the premises, the vault and safe. On October 2, 1991, the thirtieth day of trial, the Plaintiffs asked for a discontinuance on terms that they would not bring other proceedings elsewhere and that the court should order costs accordingly. Mr. Justice Waller denied their application for discontinuance.

On October 3, 1991, the Plaintiffs abandoned their claims and Mr. Justice Waller entered a dismissal for the Defendants. The Plaintiffs lost their appeal of the denial of discontinuance in the English Court of Appeal.

## *Discussion*

### I. *Legal Standards*

In addressing Defendants' motions, the following familiar standards are germane. First, "[s]ummary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As a general rule, all ambiguities and inferences drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. However, where the nonmoving party bears the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991) (citations and internal quotation omitted). In sum, if in "[v]iewing the evidence produced in the light most favorable to the nonmovant, ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991); *See also Bay*, 936 F.2d at 116.

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct.

2229, 2232–33, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). The complaint's allegations must be construed in the light most favorable to the plaintiff and the plaintiff's allegations accepted as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Ass'n*, 423 F.2d 188, 191 (2d Cir.1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

## II. *The Effect of the English Action*

### A. Comity, Res Judicata and the English Action

The collective Defendants, except for Hartley Cooper, plead the *res judicata* effect of the English action requires a finding of summary judgment in their favor. In denying their motion, we review the principles of comity and *res judicata.*

The Supreme Court has defined comity as:

the recognition which one nation allows within its Territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895).

■ The general rule of comity requires the domestic court to exercise jurisdiction concurrently with the foreign court. *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir.1987); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926–27 (D.C.Cir.1984).

■ If a final judgment is reached first in the foreign court, it can then be pled as *res judicata* in the domestic court. *See China Trade*, 837 F.2d at 36. Without a final judgment from another court, surrender of jurisdiction is justified only under exceptional circumstances. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). However, prior foreign adjudication will not bar later domestic claims provided the initial forum did not have power to award the full relief sought in the later litigation. *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986).

Under the doctrine of *res judicata*, a final judgment on the merits precludes the parties or those in privity with them from relitigating claims that were or could have been raised in the prior action. *Fay v. South Colonie Cent. School Dist.*, 802 F.2d 21, 28 (2d Cir.1986). *But see Don King Productions, Inc. v. Douglas*, 742 F.Supp. 741, 754 (S.D.N.Y.1990) (exceptions to finality requirement exist "where a ruling is rendered 'practically' final owing to factors demonstrating 'that it was not avowedly tentative' ") (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962)).

■ Under New York's "transactional approach," if claims in a later action arise out of the same "factual grouping" that formed the predicate for the prior proceeding, they are deemed part of the same "claim" and will be barred irrespective of whether they are based upon different legal theories or seek different relief. *See Davidson*, 792 F.2d at 278.

■ The English courts have not reached a final judgment on the merits that may be pled as *res judicata* in this Court. At Plaintiffs' behest, the English proceedings were abandoned in mid-course. The English Court's order of judgment states in full:

UPON hearing Counsel for the Plaintiffs and for the Defendants and upon the Plaintiffs having abandoned their claim against all the Defendants

IT IS ORDERED THAT:

1. Judgment should be entered for the Defendants with costs such costs to include the costs reserved by the Honorable Mr Justice Hirst dated the 13th of March 1991 to be taxed on an indemnity basis and to exclude the costs incurred and thrown away by the amendments to paragraphs 8, 9(2) and 9(3) of the Points of Defence dated the 28th day of August 1991

2. The Plaintiffs' costs incurred and thrown away by the amendments to para-

graphs 8, 9(2) and 9(3) of the Points of Defence dated the 28th day of August be taxed and paid by the Defendants on the standard basis.

(Order, Q.B.Comm.Ct., 1990–226, Def.Ex. Q).

The English Court did not regard this order as a final judgment on the merits with preclusive effect. In issuing his judgment on costs, Mr. Justice Waller stated:

> I gave judgment yesterday in an application to discontinue this action and in that judgment I set out the background to the action. I gave my reasons on that occasion for refusing the application of the plaintiffs for a discontinuance. This morning Mr. Hallgarten on behalf of the plaintiffs has on their behalf abandoned the plaintiffs (sic) claim. He has done so on the basis of observations I made in that judgment. *It is only right that I should make clear that what I say and what I said there was my own view which is obviously not binding on any court in New York or anywhere else.*

(Transcript of Proceedings, Judgment on Costs, Day 31, Q.B.Comm.Ct., 1990–226, Def. Ex. P) (emphasis added).

Further, in rendering his decision, Mr. Justice Wallace explicitly refused to "deliver a judgment on the merits of this case and on short final speeches in the middle of the whole thing when somebody is abandoning." (Transcript of Proceedings, Day 31, Q.B.Comm.Ct., 1990–226, Def.Ex. O at 27). Even the appellate judge, Lord Donaldson, emphasized Mr. Justice Waller's acknowledgement that his judgment was not final: " '[o]f course, the defendants would have preferred, costs apart, to have gone through with the action in full and secured a decision by the judge on the merits.' " (Transcript of Judgment Court of Appeals, Lord Donaldson quoting Justice Waller, Def.Ex. R at 5).

Thus as the English courts refuse to characterize their holding as a final judgment on the merits, this Court may not do so in their

stead. *Cf. Herbstein v. Bruetman,* 743 F.Supp. 184, 188 (S.D.N.Y.1990).

Therefore, Defendants' motion for summary judgment on the grounds of *res judicata* is denied.

## B. Collateral Estoppel and the English Action

■ In finding English and New York courts apply similar notions of collateral estoppel, the Southern District previously held "[a] party is precluded from relitigating matters determined adversely to him in a prior action." *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.,* 470 F.Supp. 610, 616 (S.D.N.Y.1979).[2] The collateral estoppel effect of the English action must be determined by New York Law. *Id.* at 615. *See also British Midland Airways Ltd. v. International Travel, Inc.,* 497 F.2d 869, 871 n. 2 (9th Cir.1974).

The Second Circuit has held that in New York, collateral estoppel requires two levels of inquiry: first, the court must determine if the issues are identical; second, the court must determine whether the party to be bound had a full and fair opportunity to contest the determination. *Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir.1993).

Collateral estoppel precludes the relitigation of issues identical to those raised and necessarily decided in a prior proceeding based on a different claim. *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984). For collateral estoppel to apply, the issue in question must have been "material to the first action or proceeding and essential to the decision rendered therein and [is] the point actually to be determined in the second action or proceeding such that 'a different judgment in the second would destroy or impair the rights or interests established by the first.' " *Id.* at 500–01, 478 N.Y.S.2d 823, 467 N.E.2d 487 (citations omitted). Moreover, "the party against whom preclusion is

---

2. "The New York Courts which have given preclusive effect to foreign country judgments have generally not specified the source of the applicable law. *See e.g., In re Zietz' Estates,* 207 Misc. 22, 135 N.Y.S.2d 573, 577–78 (Surr.Ct.1954), *aff'd,* 285 App.Div. 1147, 143 N.Y.S.2d 602 (2d Dep't 1955). *Newton v. Hunt,* 59 Misc. 633, 112 N.Y.S. 573, 574–75 (1908), *modified,* 201 N.Y. 599, 95 N.E. 1134 (1911)." *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals),* 470 F.Supp. 610, 616 (S.D.N.Y.1979).

sought [must have] been accorded a full and fair opportunity to contest the issue [in the prior proceeding]." *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276, 532 N.Y.S.2d 230, 232, 528 N.E.2d 153, 155 (1988) *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).

"To the extent that collateral estoppel has a fixed-star, the requirement of issue identity between the prior and present action is immutable." *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir.1993). Under the doctrine of collateral estoppel, the issue identity prong is satisfied if the pleadings, parties and claims reveal significant similarities. *Cf. Wilder v. Thomas*, 854 F.2d 605, 617–20 (2d Cir.1988) (comparison of pleadings establishes issue identity) (citing *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 278, 317 N.Y.S.2d 315, 321, 265 N.E.2d 739, 744 (1970); *Mother's Restaurant, Inc. v. Mama's Pizza*, 723 F.2d 1566, 1570 (Fed.Cir.1983); *Nelson v. Swing-A-Way Mfg. Co.*, 266 F.2d 184, 187 (8th Cir.1959)). In this case Plaintiffs Cindy Royce and Maximus, as *dominus litis*,[3] already pursued identical breach of contract claims against the Defendant Underwriters in the English Action.[4]

As to the second line of inquiry, the Plaintiffs had a full and fair opportunity in the English Action to litigate their breach of contract claim against the underwriters. "[A] full and fair opportunity to litigate a prior determination must concentrate on 'the various elements which make up the realities of litigation.' Factors listed by the New York Court of Appeals to assist in this inquiry include the forum for the prior litigation, the competence and the experience of counsel, the foreseeability of future litigation, and the context and circumstances surrounding the prior litigation that may have deterred the party from fully litigating the matter." *Conte v. Justice*, 996 F.2d 1398, 1401 (2d Cir.1993) (citing *Schwartz v. Public Adm'r of Bronx County*, 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955, 246 N.E.2d 725).

Here, Plaintiffs Cindy Royce and Maximus chose the English forum. The Plaintiffs were represented by competent counsel,[5] consumed 152 hours, or 31 days, of trial time (Toulson Aff.; Def.Ex. C), submitted written statements and evidence, (Def.Ex. F–L), and caused an English Justice to travel to New York and back to examine relevant forensic evidence. Further, their corporations' principals—Samuel Scheiner, Randy Scheiner, Morton Gold and Daniel Squillante—personally testified in the English proceedings. It was the Plaintiffs that sought, but did not secure, a discontinuance. And ultimately, it was the Plaintiffs themselves who requested the dismissal. Based on these undisputed facts, this court cannot imagine a litigant receiving a fuller or fairer opportunity to pursue his or her day in court. *Ackermann v. Levine*, 788 F.2d 830, 837 (2d Cir.1986) (its a "well-settled rule that a final judgment obtained through sound procedures in a foreign country is generally conclusive ...").

Accordingly, given collateral estoppel effect of the English Action, Defendants are entitled to summary judgment on the Plaintiffs' breach of contract claim.

## III. *The New York Criminal Plea*

Defendants contend the doctrine of collateral estoppel bars the Plaintiffs from pursuing their claims because corporate principals—Samuel Scheiner, Morton Gold and Daniel Squillante—pled guilty to Attempted Grand Larceny in the Fourth Degree.

### A. Guilty Pleas do not Bar Subsequent Civil Litigation

Defendants argue that a guilty plea estops the Plaintiffs from raising claims in a subse-

---

3. *Dominus litis* means master or mistress of the suit.

4. A comparison of this action's Complaint and the English Action's Points of Complaint reveals the virtual identity of claims.

5. Although Plaintiffs attempted to sue their attorneys for professional malpractice in the Southern District, Judge Patterson, as a result, in part, of his review of both the competence and the experience of the counsel, granted the attorneys/defendants' motion for summary judgement on the question of attorney malpractice. *See Cindy Royce Creations v. Simmons and Simmons*, 92 Civ. 9404 (RPP), slip op. at 7–11, 1993 WL 288291 (S.D.N.Y. July 27, 1993). Accordingly, this court will presume the attorneys were competent.

quent civil lawsuit. "While for some years it has been well established that guilty pleas 'constitute[ ] estoppel in favor of the *United States* in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case' *United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978) (emphasis added) only recently, in *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 43 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987), did the Court of Appeals hold that a criminal *conviction* could also have estoppel effect in a civil case in which the Government was not a party." *Goodridge v. Harvey Group Inc.,* 728 F.Supp. 275, 278 (S.D.N.Y.1990) (emphasis added).[6]

The distinction between a criminal conviction and criminal plea is subtle, yet important, especially if subsequent *civil* trial rights are implicated. The collateral estoppel effect of a conviction is clearly premised upon the notion that the government must bear a higher standard of proof in a criminal proceeding than the standard required to prevail in a civil proceeding. However, the motivations for a *defendant to accept a criminal* plea, especially a relatively nominal one, as in this case, lead to a more complex question of law.

■ The Second Circuit has not yet extended the doctrine of collateral estoppel to bar subsequent civil actions based on a guilty plea. *See e.g. Golino v. City of New Haven,*

950 F.2d 864 (2d Cir.1991) (finding state court determination of probable cause for arrest in murder prosecution does not collaterally estop suspect from litigating existence of probable cause in subsequent § 1983 civil rights action for malicious prosecution).

Similarly, the courts in the Southern District are divided as to how to approach the issue.[7] One line of cases has held that guilty pleas collaterally estop subsequent civil actions. *See e.g. U.S. v. International Brotherhood of Teamsters, etc.,* 777 F.Supp. 1133 (S.D.N.Y.1991) *aff'd* 970 F.2d 1132 (2d Cir. 1992) (holding that union official's guilty plea to criminal charges collaterally estopped him form contesting facts underlying disciplinary charge arising from same incident).

However, the majority of the courts in this District have not found such a bar. *See e.g. Goodridge v. Harvey Group Inc.,* 728 F.Supp. 275 (S.D.N.Y.1990) (finding corporate officer's plea of guilty to conspiracy to defraud United States through payments of unlawful bribes and kickbacks and to tax evasion did not establish material misrepresentation or omission, nor the detrimental reliance required to establish a Rule 10b–5 violation, so as to collaterally estop relitigation of the issue in a subsequent civil case); *Bernstein v. IDT Corp.,* 638 F.Supp. 916 (S.D.N.Y.1986) (holding collateral estoppel in a subsequent civil case *only if shown* that facts were necessarily found by a jury which previously convicted defendant of

---

**6.** *See also New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065 (2nd Cir.1988), *cert. denied,* 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988) and *Lizza Industries, Inc. v. New York,* 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (trial court did not err in civil antitrust suit involving conspiracy by contractors and their officers to rig bids on highway contracts by refusing to give mail fraud convictions of four of the co-conspirators preclusive effect; court did not err in allowing State to use judgments only as prima facie evidence that convicted co-conspirators had engaged in collusive schemes with respect to which his guilt was established in the criminal case).

**7.** Two district courts, in the District of Columbia and in the Southern District, have presumed it is "well settled" that both criminal convictions and *pleas* estop defendants from pursing subsequent civil cases. However, the earlier "well settled" case, from the D.C. District Court, misstates the Supreme Court's holding in *Emich,* a criminal conviction case, for the proposition. *Emich* is a centennial Supreme Court decision that held pri-

or final judgments or decrees *in favor of the United States* are available to a private suitor as prima facie evidence of all matters relevant to the judgment for estoppel purposes.

In *Alsco,* the D.C. District Court cites *Emich* to state "well established principles of federal law hold that guilty pleas collaterally estop the future civil adjudication of issues necessarily admitted to by the plea." *Alsco–Harvard Fraud Litigation,* 523 F.Supp. 790 (D.C.D.C.1981) (*citing Emich Motors v. General Motors,* 340 U.S. 558, 568, 71 S.Ct. 408, 413, 95 L.Ed. 534 (1951)).

The later case, from the Southern District of New York, cites no precedent in support of this proposition whatsoever, See *Roso v. Saxon Energy Corp.,* 758 F.Supp. 164, 167 (S.D.N.Y.1991) ("It is well settled that a criminal conviction, whether by jury verdict or guilty plea, estops a convicted defendant from raising factual issues decided in the criminal proceeding in a subsequent civil lawsuit.").

crime); *Teachers Ins. and Annuity Ass'n v. Green,* 636 F.Supp. 415 (S.D.N.Y.1986) (judgment requiring defendant, who pled guilty to violations of mail fraud statute, to make restitution of embezzled funds, in part pursuant to payment schedule, did not have collateral estoppel effect with respect to victims' subsequent civil action for restitution, where payment schedule was not equivalent in present value terms to present judgment for remaining balance).

Accordingly, we concur with the majority in the Southern District in holding that a guilty plea, as a matter of law, should not collaterally estop a subsequent civil action.

**B. Issue Identity**

"The party asserting collateral estoppel based on a guilty plea has the burden of showing precisely which facts the plea establishes." *Goodridge,* 728 F.Supp. at 279 (relying on *Appley v. West,* 832 F.2d 1021, 1026 (7th Cir.1987). *See also Schwartz v. Public Adm'r of Bronx County,* 24 N.Y.2d 65, 73, 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 730. At the very least, the trial judge must ascertain the extent of the estoppel accrued from a prior criminal matter. *Emich Motors v. General Motors,* 340 U.S. 558, 569, 71 S.Ct. 408, 414. "When a party invokes collateral estoppel based on a guilty plea, a court must examine the record of the criminal proceedings or plea colloquy to determine what issues were comprehended and decided." *State Farm Mutual Automobile Insurance Co. v. Rosenfield,* 683 F.Supp. 106, 108 (E.D.Pa.1988) (citations omitted). *But see Burks v. Jakubowski,* No. 90 Civ. 614, 1993 WL 462828, *3, 1993 U.S.Dist. LEXIS 6070, *14 (N.D.N.Y.1993) ("guilty plea is accorded the same preclusive effect in a subsequent civil proceeding as is a conviction after trial") (citing *U.S. v. Private Sanitation Industry Ass'n,* 811 F.Supp. 808, 813 (E.D.N.Y.1992)).

■ The Defendants contend the criminal indictment and subsequent pleas estops Plaintiffs' claims of Breach of Contract, violations of General Business Law § 349 and of RICO. Contrary to the Defendants' assertion, unsupported any citation to the law, a criminal indictment has no estoppel powers whatsoever. *See e.g. National Union Fire Ins. Co. v. Mason, Perrin & Kanovsky,* 689 F.Supp. 303, 307 (S.D.N.Y.1988) (Indictment of attorneys in New York, indicating that grand jury found acts by them in New York, could not be used to establish that they had transacted business in New York for purposes of long-arm statute.) In this case, even a cursory comparison of the indictment and the plea agreement reveals that the charges alleged in the indictment were dropped by the District Attorney's office.

■ The real question, then, is whether the fact that Samuel Scheiner's, Morton Gold's and Daniel Squillante's plea to a class A Misdemeanor for Attempted Grand Larceny of an amount somewhere between $1,000 and $3,000 estops a subsequent civil suit against their insurers for breach of contract and a variety of other claims. The Plaintiffs argue that the pleas merely represent an admission of inflating their insurance claims by an amount between one and three thousand dollars that is not material to this civil action.

Following the two prong test for collateral estoppel, this court finds that the issues presented in the plea bargain and the civil action are not so identical as to warrant a summary judgment on this set of facts. First, we find that the plea colloquy does not establish a bar to this suit.

THE COURT: All right, Mr. Scheiner, Mr. Squillante, please listen to me carefully. Your attorneys have told me that you now wish to plead guilty under Count Three of this indictment to the Class A Misdemeanor of Attempted Grand Larceny in the Fourth degree, is that in fact what you want to do Mr. Scheiner?

DEFENDANT SCHEINER: Yes.

\* \* \* \* \* \*

THE COURT: Now, it's charged in this indictment that you both, in the County of New York and elsewhere, on or about March 25, 1992 intentionally, you knowingly attempted to steal property with a value in excess of one thousand dollars from Lloyd's of London, by causing a false and fraudulent Proof of Loss Claim to be filed which overstated the value of goods alleg-

edly stolen from the premises of Cindy Ross (sic) Creations on August 18, 1989 by a sum in excess of one thousand dollars, is that true, Mr. Scheiner?

DEFENDANT SCHEINER: Yes.

THE COURT: Mr. Squillante?

DEFENDANT SQUILLANTE: Yes.

*See* Defendant's Exhibit EE. In exchange for this plea, the first and second counts concerning Insurance Fraud, Grand Larceny in the First Degree, and the charges against Plaintiffs Randy Scheiner, Cindy Royce and Maximus were all dropped. Thus, the Plaintiffs' contention that two principals merely pled guilty to inflating their insurance claim by a maximum of $3,000 on a $5 million claim is technically correct.

The Plaintiffs further argue the plea for Attempted Larceny in the Fourth Degree, the inflation of an insurance claim, is not "material" enough to bar Plaintiffs' civil action. Plaintiffs cite two fire insurance cases for their assertion regarding the materiality. They correctly argue that the current disposition of New York law requires insurers to prove insured's false statements are material and willful. The first case, *Deitsch*, held that an insurer failed to establish the defense of fraudulent Proof of Loss absent proof of insured's intent to defraud, despite insurer's contention that insured's inventories of goods damaged after fire were speculative. *Deitsch Textiles, Inc. v. New York Property Ins. Underwriting Ass'n,* 62 N.Y.2d 999, 479 N.Y.S.2d 487, 468 N.E.2d 669 (1984). In the second case, *Fine,* the Second Circuit refers to *Deitsch* in declaring that the "New York Court of Appeals reaffirmed that in addition to materiality, an insurance company must prove willfulness to void a fire insurance policy." *Fine v. Bellefonte Underwriters*

*Ins. Co.,* 758 F.2d 50, 52 (2d Cir.1985) (citations omitted).

The Defendants have cited two Second Circuit cases that stand for the proposition that under New York law, submission of fraudulent Proof of Loss statements releases an insurer from its obligation under insurance polices. *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 43 (2d Cir.1986); *Fine,* 758 F.2d at 51. However, it must be noted that New York insurance statutes require false swearing clauses in the *fire* insurance contract language.[8]

The case before this court is distinguishable from *Gelb* in several essential ways. First, the principal holding of *Gelb* is "federal law governs the collateral estoppel effect of a federal criminal conviction in a subsequent diversity action." *Gelb,* 798 F.2d at 43. In *Gelb,* the Plaintiff had been convicted before a federal jury of "grossly inflating the losses claimed." *Gelb,* at 40. Here, as the Plaintiffs point out, the state court plea was for an inflation of at most three thousand dollars on an alleged five million dollar claim—hardly a significant drop in the proverbial bucket.

The second case referred to in the Defendants' Reply Memorandum, *Fine,* held that a false statement made on examination under oath must be both ·material and willful in order to void a fire insurance policy. *Fine,* 758 F.2d at 52. The fire insurance policy in question had a specific "False Swearing Clause." This clause states that "the entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact ..." *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 181, n. 4 (2d Cir.1984); *aff'd,* 758 F.2d 50 (2d Cir.1988). As the Defendants have not alleged a breach of the false swearing clause,[9] it is not necessary to

---

8. New York State Insurance Law § 3404 (McKinney 1985) requires the use of a Standard Fire Policy for the State of New York. The relevant part states:

Concealment, Fraud:

This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured thereto.

9. Neither Defendant's Memorandum of Law nor Reply Memorandum bothered to draw the courts attention to the Lloyd's' contract version of a false swearing clause located in section which states in full:

21) This entire Policy shall be void if, whether before or after a loss, the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Assured therein, or in case of any fraud or false swearing by the Assured relating thereto.

reach the issue of whether the policies are void if the Proof of Loss is fraudulently inflated by a relatively minimal sum.

## C. Full and Fair Opportunity

In *Gelb,* the Plaintiff was previously *convicted* before a federal jury of causing the fire in his premises, misrepresenting to his insurance company that he did not cause the fire, and of *grossly* inflating his claims. Gelb's convictions were affirmed by the Second Circuit on appeal. There is no question in his case that he was fully and fairly afforded an opportunity to litigate all the relevant issues in his prior action. *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38 (2d Cir.1986).

Here, some of the parties have not had a chance to fully and fairly litigate their claims and "[d]ue process prohibits estopping them despite one or more existing adjudications of the identical issue which stand square against their position." *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) (citations omitted). *See also, Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 484, 102 S.Ct. 1883, 1899, 72 L.Ed.2d 262 (1982) (in permitting estoppel a panoply of procedures, complemented by administrative as well as judicial review, is sufficient under the Due Process Clause); *Conte v. Justice,* 996 F.2d 1398, 1401–02 (2d Cir.1993) (factors for finding no estoppel to the second suit included new attorneys and a different property interest). As the parties have not had a full and fair opportunity to litigate their claims, and due to the concerns outlined in III.A., *supra,* their guilty plea does not bar the Plaintiffs from pursuing a subsequent civil action.

Therefore, Defendants' motion for summary judgment as to the collateral estoppel effect of the New York Criminal pleas, is denied.

## IV. *Federal Claims*

### A. RICO Claims

To state a cause of action under RICO, the Plaintiffs must allege:

(Lloyd's contract, Def.Ex. BB at 6).

(1) that the defendants (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce.

*Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276 (S.D.N.Y.1991). The failure of any one element is fatal to a RICO claim.

1. Plaintiffs Inadequately Plead Predicate Acts Requirement

This Court has previously held that predicate acts of a RICO claim sounding in fraud must satisfy the particularity requirements of Rule 9(b). Fed.R.Civ.P. 9(b). *Browning Ave. Realty Corp. v. Rosenshein,* 142 F.R.D. 85 (S.D.N.Y.1992); *Morin v. Trupin,* 711 F.Supp. 97, 111 (S.D.N.Y.1989). "Indeed, 'all of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions.'" *Browning,* 142 F.R.D. at 89 (*quoting Plount v. American Home Assurance Co.,* 668 F.Supp. 204, 205 (S.D.N.Y.1987); *see also O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 230 (S.D.N.Y.1989); *Lou v. Belzberg,* 728 F.Supp. 1010 (S.D.N.Y. 1990).

To find violations of mail and wire fraud statutes that satisfy the "predicate acts" requirement of RICO, Plaintiffs must satisfactorily allege: first, participation in a scheme to defraud; and second, knowing use of the interstate mails or interstate wires in furthering the scheme. *Connors v. Lexington Ins. Co.,* 666 F.Supp. 434, 450 (E.D.N.Y. 1987) (citing *United States v. Gelb,* 700 F.2d 875, 879 (2d Cir.1983), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983)).

A complaint must delineate the specifics of each purported use of the mail and wires, including the time, place, speaker, and content of the alleged fraudulent misrepresentations, as well as the manner in which the misrepresentations were fraudulent.

*Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986); *Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987); "Under Rule 9(b), the complaint must allege '(1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn.'" *Morin v. Trupin,* 778 F.Supp. 711, 716 (S.D.N.Y.1991) (quoting *Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y.1983)).

■ According to Plaintiffs two alleged incidents constitute the predicate acts in support of their RICO claims. The first alleged incident [10] consists of a filmed visit to the safe at the at the police warehouse by the District Attorneys Office on an unspecified date with K. Duncel, Detective McNicholas, Dennis Wade and Karl Alizade. However, the Plaintiffs failed to properly plead either the time of this meeting or identify who from the District Attorney's office was present. In a pleading error fatal to their claims, the Plaintiffs do not state the exact nature of the fraud perpetrated in this meeting. The Plaintiffs' Memorandum of Law does not cite any case law or statute establishing, or even arguing, the illegality of such a meeting.

The second alleged incident consists of:

On or about August 19, 1989 Karl Alizade and City Safe, Inc. appeared at the premises of Cindy Royce and Maximus to inspect the damage to the vault and safe. Mr. Alizade immediately sold the plaintiffs a new vault door and two safes for approximately $21,000 and offered to remove and discard the old vault door and safe. Unbeknownst to plaintiffs, Karl Alizade and City Safe, Inc., were in fact working for Lloyd's. Instead of disposing of the vault door and safe, Alizade manipulated the same and retained them on his premises in furtherance of the conspiracy.

(Complaint ¶ 88). The facts asserted in Paragraph 88 of Complaint fail to establish a predicate act or any taint of illegality.

As in *Morin,* we find the complaint fails to plead with requisite particularity:

[t]he relation of individual defendant to predicate act and to the conduct supporting ascription of such act to the defendant. As pleaded, it is simply too difficult a task to determine the specific predicate acts each defendant is charged with committing (or aiding and abetting) and which factual allegations establish their connection to such predicate acts.

*Morin v. Trupin,* 747 F.Supp. 1051, 1065 (S.D.N.Y.1990).

### 2. Mail and Wire Fraud Claims

To plead mail and wire fraud as RICO violations, the Plaintiffs must allege participation in a scheme to defraud and knowing use of the interstate mails or interstate wires to further the scheme. *See Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 282 (S.D.N.Y.1991); *Browning Ave. Realty Corp. v. Rosenshein,* 142 F.R.D. 85, 89 (S.D.N.Y. 1992). Allegations of mail and wire fraud must specify the use of mails and wires with *particularity Frota v. Prudential–Bache Secur., Inc.,* 639 F.Supp. 1186, 1192 (S.D.N.Y.1986).

In their complaint, the Plaintiffs fail to articulate a single fraudulent statement that was allegedly transmitted or received by wire. (*See* Complaint ¶¶ 79–93). The Plaintiffs' Memorandum of Law discusses RICO generally, but does not illuminate any set of facts that establish RICO violations. (Pl. Mem. of Law, at 38–45). The Plaintiffs' reliance on the wire fraud statute to satisfy the predicate acts requirement of RICO is therefore futile.

### 3. § 1962(a), (c) and (d) Violations Insufficiently Plead

■ A finding of a pattern of "racketeering activity" requires *indictable criminal* conduct, as defined in the federal statutes. 18 U.S.C. § 1961(1); *see also Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (O'Connor, J., concurring in part and concurring in the judgment). Courts have struck down RICO claims for failing to establish a

---

10. The Complaint does not allege specific predicate acts. In order to review their RICO claims here, this Court presumes the two incidents presented in their complaint were meant to be seen by the court as predicate acts.

pattern of racketeering activities.[11] *See e.g. Creative Bath Products, Inc. v. Connecticut General Life Ins. Co.,* 837 F.2d 561 (2d Cir. 1988) *cert. denied,* 492 U.S. 918, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989) (finding insurance company and agent did not engage in any "pattern of racketeering activity" actionable under RICO when, in order to induce partnership into purchasing life insurance policies on partners, agent allegedly made three distinct fraudulent representations through use of mails and wires.); *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579 (S.D.N.Y.1989) (holding air carriers' agent failed to state RICO claim against travel agency arising out of agency's alleged failure to report or pay for airline ticket sold; pleading did not indicate that agency's conduct presented threat of continuity sufficient to establish pattern of racketeering activity, as it alleged single scheme which covered 13 month period.).

In their complaint, the Plaintiffs inappropriately substitute broad conclusory statements for specific racketeering claims:

86. Defendants have engaged in or conspired in the commission of two or more predicate acts of mail and/or wire fraud, all of which predicate acts took place since August 18, 1989, and have engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

\* \* \* \* \* \*

92. Defendants and each of them, knowingly used and conspired in the use of the United States mails and/or interstate wire communications on more than two occasions since August 18, 1989 in the furtherance of their scheme or artifice to defraud, abuse process, maliciously prosecute and violate the civil rights of Cindy Royce Maximus, and Randy Scheiner as

alleged in this complaint and thus engaged in acts indictable under the federal mail fraud statute, 18 U.S.C. § 1343, thereby committing predicate acts of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B).

(Complaint ¶¶ 86, 93). As noted above, the Complaint fails to cite a specific single date on which the Defendants used either the mails or the wires to perpetrate their alleged racketeering activity. Plaintiffs' pleadings, in short, attempt to "talk the talk" without walking the proverbial walk.[12]

Plaintiffs also allege that Lloyd's paid specified sums to various co-Defendants, and that the Defendants "have directly or indirectly used or invested income derived ... in violation of 18 U.S.C. § 1962(a). (Complaint ¶ 84–85). However, a § 1962(a) violation is not established by showing participation in the alleged pattern of racketeering activity, or in the derivation of income from that pattern. Rather, a violation is found by exposing the use or investment of the income in acquiring, establishing or operating an enterprise. *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 283 (S.D.N.Y.1991) (citing *Ouaknine,* 897 F.2d at 82).

The Complaint does not describe the illicit acts or set of facts that generated the payments in question, how such use or investment caused the injuries alleged, or how the alleged payments constitute a claim under § 1962(a). *Ouaknine v. MacFarlane,* 897 F.2d 75, 83 (2d Cir.1990); *Zaro,* 779 F.Supp. at 283; *Williamson v. Simon and Schuster, Div. of Gulf & Western Corp.,* 735 F.Supp. 565, 568 (S.D.N.Y.1990); *Azurite Corp. v. Amster & Co.,* 730 F.Supp. 571, 579 (S.D.N.Y.1990). Plaintiffs' conclusory statement that "as a result of these violations of

11. *But see U.S. v. Indelicato,* 865 F.2d 1370, 1381 (2nd Cir.1989) *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989) ("[W]e conclude today that proof of two acts of racketeering activity without more does not suffice to establish a RICO pattern; that the concepts of relatedness and continuity are attributes of activity, not of a RICO enterprise, and that a RICO pattern may not be established without some showing that the racketeering acts are interrelated and that there is continuity or a threat of continuity; that a pattern may be established without proof of mul-

tiple schemes, multiple episodes, or multiple transactions; and that racketeering acts that are not widely separated in time or space may nonetheless, given other evidence of the threat of continuity, constitute a RICO pattern.")

12. "There are many who talk the talk, but few who walk the walk." Dexter Scott King, the youngest son of Dr. Martin Luther King, Jr., *Quote of the Day,* UPI, Jan. 13, 1986, *available in* LEXIS, Nexis Library, UPI file.

§ 1962, Cindy Royce and Maximus have been injured in their business or property and have suffered actual damages in an amount that will be proved at trial, but which amount is currently believed to be equal to or in excess of Twenty Million Dollars" fails to meet this standard. (Complaint ¶ 93).

The Plaintiffs state that "unbeknownst to plaintiffs, Karl Alizade and City Safe, Inc., were in fact working for Lloyd's." (Complaint ¶ 87) Further, the Plaintiffs claim that Defendant WFFW "was instrumental in cancelling" Plaintiff Corporations property insurance in November, 1991 with the Pacific Employers group. The materiality of this allegation in the RICO context is inadequate. Similarly, the Plaintiffs' broad claim that the Defendants "knowingly used and conspired" in the use of the U.S. mails and wires, without a specific instance of such acts, is an insufficient plea. "While Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' An ample factual basis must be supplied to support the charges." *Ahmed v. Trupin,* 781 F.Supp. 1017, 1025 (S.D.N.Y. 1992) (citations omitted). "Facts that are merely as consistent with fraudulent intent as they are with its absence are insufficient. Plaintiffs must allege facts that unambiguously give rise to a strong inference of fraudulent intent." *Kas v. The Chase Manhattan Bank, N.A.* No. 90 Civ. 44, 1991 WL 275754, *2, 1991 U.S.Dist. LEXIS 18202, *6 (S.D.N.Y. Dec. 16, 1991).

Finally, the Plaintiffs' broad claim that Defendants "conspired to violate the provisions of 18 U.S.C. §§ 1962(a) and 1962(c), in violation of 19 U.S.C. § 1962(d)" is insufficient. (Complaint ¶ 83). The Plaintiffs must " 'show that the defendants understood the scope of the enterprise and knowingly agree to further its affairs through the commission of various offenses' " to state a § 1962(d) claim. *Morin v. Trupin* 747 F.Supp. 1051, 1067 (S.D.N.Y.1990) (quoting *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 567 F.Supp. 1146, 1154 (D.N.J. 1983). Plaintiffs have not showed any overt act or assent of any Defendant to the alleged conspiracy.

At best, Plaintiffs allegations center around a business dispute involving a breach of contract. General re-allegations of numerous earlier paragraphs in the complaint, with the intention of making out RICO violations, via breach of contract, malicious prosecution, abuse of process, and other various state claims is not sufficient nor proper. *Gregoris Motors v. Nissan Motor Corp.,* 630 F.Supp. 902, 913 (E.D.N.Y.1986). The contract dispute, as we determined above, is collaterally estopped by the English Action from being raised here. Setting forth vague allegations that Defendants are somehow in league against Plaintiffs does not establish a factually based RICO scheme. Indeed, most of the alleged RICO disputes revolve around the notion that Defendant insurers were rationally resistant to the idea of paying a fraudulent claim. *Cf. Atlantic Gypsum Co. v. Lloyd's International Corp.,* 753 F.Supp. 505, 512 (S.D.N.Y.1990) (Most of alleged RICO communications were motivated by Defendants' desire to have their loans repaid, "a desire neither surprising nor sinister.") *See also Zaro,* 779 F.Supp. at 282.

According, Defendants' motion to dismiss for failure to state a RICO Claim is granted.

### B. § 1983 Claims

Section 1983 provides that "[e]very person who, under color of [law] subjects, or causes to be subjected, any ... person within the jurisdiction [of the United States] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity...." Civil Rights Act of 1871, 42 U.S.C. § 1983. The Supreme Court has interpreted the "plain words" of this statute as imposing liability "only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and its laws." *Rizzo v. Goode,* 423 U.S. 362, 370, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

In their second federal claim, Plaintiffs Cindy Royce and Maximus contend that the Defendants violated their civil rights by providing false testimony, conspiring to commit perjury, and conspiring to suppress evidence. In addition, Defendants' alleged contact the

Manhattan District Attorney's office resulted in viewing and tampering with evidence without notice. (Complaint ¶¶ 118–27). All these charges are related to the English Action and, as we have held above, are collaterally estopped from being raised here. Nevertheless, Plaintiffs argue that their allegations— presumably through the incorporation of their state causes of action of malicious prosecution and abuse of process—establish an actionable violation of 18 U.S.C. § 1983.

In this Circuit, "a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987); *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976). Typical allegations sounding in the Plaintiffs' § 1983 charge are illustrated in the following excerpts from the Complaint:

> 121. After a call from Dennis Wade during the trial in London, the New York County District Attorney's office prevented the plaintiffs' attorneys from cross-examining J.M. McNicholas with respect to his contemporaneous reports known as DD5's.

> 122. After another call from Dennis Wade during the same trial, the New York County District Attorney's office caused the plaintiffs' attorneys to return to his office the Fire Marshall's photos which demonstrated that Karl Alizade had committed perjury as to the condition of the vault door.

(Complaint ¶ 121–122) Not only are these allegations inappropriately vague, complaints regarding the procedures of another court of law are not appropriately raised here. (*See,* Part I.B *supra*).

Nevertheless, even a cursory review of the English record indicates that there is little factual basis in Plaintiffs' allegation. Mr. Justice Waller, in part, based his dismissal on these same allegations in his rendering of the judgment.

> "I mentioned yesterday that very serious allegations were made against Mr. Alizade, Mr. Coin and, I should have mentioned yesterday, Detective McNicholas ... But I do not think that I would be being fair to those witnesses, having regard to the observations made, if I did not say that as far as the case had gone—and I have not heard all submissions—it seemed to me that those witnesses were witnesses of truth. I do not think it is right, the submission having been made in open court as it was, that I should not express that view ..."

(Judgment on Costs, Day 31, Def.Ex. P at 4)

To withstand dismissal under § 1983, a plaintiff must show the deprivation of a constitutional or legal right that resulted from the sort of abuse of governmental power that is necessary to raise an ordinary tort by a government agent to the stature of a violation of the Constitution. *See e.g. Turpin v. Mailet,* 579 F.2d 152, 169 (2d Cir.1978) (Oakes, J., concurring), *vacated sub nom., West Haven v. Turpin,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645, and *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Williams v. Kelley,* 624 F.2d 695, 697 (5th Cir.1980), *reh. denied,* 632 F.2d 895 (5th Cir.1980) *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). A statement of summary conclusions is insufficient to state a claim under § 1983. *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

To recover under 42 U.S.C. § 1983, the Plaintiffs must demonstrate deprivation of a constitutional right by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear v. West Hartford,* 954 F.2d 63, 68 (2d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *Studifin v. New York City Police Department–License Division–Firearms Control Section,* 728 F.Supp. 990, 993 (S.D.N.Y.1990) (to establish claims against private defendant, "pleadings must specifically show agreement and concerted action between private party and the state actors ..."). *See also Dahlberg v. Becker,*

**704**

748 F.2d 85, 89 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985) (In order to state a § 1983 cause of action, a plaintiff must allege facts which implicate both state action and a state actor.) In this case no government official has been named in Plaintiffs' alleged conspiracy.

Plaintiffs must "show that the party charged with the deprivation is a person who is a state official or someone whose conduct is other wise chargeable to the State." In other words, to establish deprivation of a federally-protected right there must be both "state action" and a "state actor." *Dahlberg,* at 89. Here, the Plaintiffs do not state how the District Attorney's office contacted them or "caused" the Plaintiffs' attorney to return the alleged photos. A fact-driven causal link is never established between Mr. Wade's alleged phone call and the Plaintiffs' alleged civil rights harms.

As a result, Plaintiffs' § 1983 claims are dismissed for failure to state a claim.

### V. *Pendent Claims are Dismissed*

Leave is granted to replead the federal claims. However, in the absence of a valid federal claim in the Complaint at bar, this Court declines to exercise jurisdiction over the pendent state claims that are not collaterally estopped by the English Action. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). As such, claims Two through Six, Eight, Nine and Ten, are dismissed as well.

### *Conclusion*

For the reasons set forth above, Defendants' Motion for Summary Judgment as to Plaintiffs' First Cause of Action is granted. Defendants' Rule 12(b) Motions dismissing Plaintiffs' Seventh and Eleventh Causes of Action are granted. Plaintiffs' Second through Sixth, Eighth, Ninth and Tenth Causes of Action are dismissed for lack of jurisdiction.

The Defendants' Motion for a Cost Bond is denied.

It is so ordered.