Kimberly FONTAINE, Plaintiff,

v.

Kimberly RYAN, Stephen Sprouse, Stephen Sprouse Studios, Inc., Pinkerton's, Inc., Bianka Bernic, Jed Richardson and Keeble Cavaco & Duka, Inc., Defendants.

No. 88 Civ. 1842 (VLB).

United States District Court, S.D. New York.

April 7, 1994.

Stuart R. Shaw, New York City, for plaintiff.

Ralph F. DiSomma, Kelly & McGlynn, New York City, for defendants CSI, Stephen Sprouse and Steven Sprouse Studios.

Timothy Gillane, Gallahan, Schepp, New York City, for defendant Pinkerton's, Inc.

Bernadette Harrigan, Morris, Graham, Westbury, NY, for defendant Blanka Bernic.

Silfen & Glasser, New York City, for defendant Ryan.

Kerrigan & MacCartney, Nyack, NY, for defendant Keeble Inc.

Jed Richardson, pro se.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case, in which jurisdiction is based on diversity of citizenship, involves an altercation at a party in the course of which the defendant Kimberly Ryan ("Ryan") allegedly injured the plaintiff by throwing a wine glass. In addition to Ryan, plaintiff sued the sponsor of the party, Pinkerton's, Inc. ("Pinkerton's") (which had been retained to provide security at the affair); and other defendants.

Summary judgment was granted by memorandum order dated December 13, 1993, adopting a Report and Recommendation of United States Magistrate Judge Leonard Bernikow of September 2, 1993 and dismissing the case as to all defendants other than Ms. Ryan.[1]

Plaintiff's counsel Stuart R. Shaw, Esq. ("Shaw"), filed an unsigned motion dated December 17, 1993 seeking:

> (a) to withdraw his appearance as counsel;
>
> (b) for an order granting him a lien on:
>
> > (i) plaintiff's case file held by Shaw, and
> >
> > (ii) proceeds of any settlement or judgment;

---

1. *Fontaine v. Ryan,* 849 F.Supp. 190 (S.D.N.Y. 1993).

(c) for an extension of time to reargue the December 13, 1993 decision; and

(d) staying the action until new counsel, or a *pro se* appearance by plaintiff, is arranged for.[2]

Shaw's motions are denied with the following provisos:

(1) Denial of his motion to withdraw his appearance as counsel for plaintiff is without prejudice to its renewal upon consent of plaintiff or substitution of new counsel agreeable to plaintiff.

(2) Denial of Shaw's motion (b)(ii) above for a lien on the proceeds of any settlement or judgment is without prejudice to renewal if withdrawal is granted.[3]

## II

■ General Rule 3(c) of the United States District Courts for the Southern and Eastern Districts of New York provides:

An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

The reasons given by Shaw are not satisfactory, and his withdrawal without consent or substitution at this juncture would prejudice plaintiff's suit against the remaining defendant Ryan, as well as Ryan's own interest in an early disposition.

This case was filed in 1988; ultimately the litigation reached the stage where a Report and Recommendation by Judge Bernikow was filed in September 1993 recommending dismissal of all claims except those against Ryan. Shaw voluntarily continued to represent the plaintiff without protest throughout these phases of the litigation, and filed objections to the Report and Recommendation.

Only after a district court decision was made removing all but one defendant from the case did Shaw ask to be relieved. His relief would have left the plaintiff without representation in pursuing the alleged actual physical wrongdoer who is the remaining defendant. The granting of such a request would be entirely inconsistent with the just, speedy or inexpensive disposition of this action which is called for by Fed.R.Civ.P. 1.

Waiting until the prospects for recovery against defendants who may have deep pockets have failed, and then complaining about counsel's relationship with the client, amounts to inexcusable and prejudicial laches which bar the relief sought. See generally *Bourne Co. v. Tower Records,* 976 F.2d 99 (2d Cir.1992); *Robins Island Preservation Fund v. Southold Development Corp.,* 959 F.2d 409, 421–25 (2d Cir.), *cert. denied* —— U.S. ——, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992); *Daingerfield Island Protective Society v. Lujan,* 920 F.2d 32 (D.C.Cir.1990) (R. Ginsburg, J.), *cert. denied* —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

One cannot be permitted to wait and see if a ruling in a litigation is favorable and, if it is not, then successfully spring for the first time a procedural contention based on information previously known—such as that venue should be changed or counsel relieved because of problems with a client. See *In re New York Trap Rock Corp.,* 158 B.R. 574 (S.D.N.Y.1993).

The courts and the Bar are interdependent partners in the administration and development of the law, each of equal dignity and

---

**2.** Shaw also filed a Notice of Appeal on January 3, 1994 (Dkt No 186) without paying the fee, notwithstanding that the December 13, 1993 decision did not dispose of the entire case.

No certificate under Fed.R.Civ.P. 54(b) to permit an appeal from a nonfinal judgment was requested or granted. Nor did Shaw apply for a certificate under 28 USC 1292(b) allowing him to seek interlocutory review on discretionary grounds.

The appeal was dismissed on February 7, 1994 for failure to serve a pre-argument statement and to take other required steps.

**3.** If there is a renewal, Shaw shall submit evidence showing (A) what fee arrangements Shaw had with plaintiff, and (B) what legal fees or expenses were incurred in connection with plaintiff's litigation against Ryan, excluding any expenses incurred primarily because of inclusion of other defendants in this lawsuit.

responsibility. See Pillsbury, "The Legal Relations Between Bench and Bar," 32 Am. L.Rev. 161, 183 (Mar–Apr 1898); Shawcross, "Functions and Responsibilities of an Advocate," 13 Rec. Ass'n Bar City NY 483 (1958); Fales, *Introduction* to *Will the ABA Draft Model Rules of Professional Conduct Change the Concept of the Lawyer's Role?* (Ass'n Bar City NY 1981). The purpose of the legal system is to promote "the convenience of the lay people who sue and are sued." F. Pollock to O.W. Holmes, 1 *Holmes–Pollock Letters* 8 (Howe ed 1961).

The independence of the Bar can only be maintained, and our adversary system can only work so as to yield the "just, speedy and inexpensive" determination of cases as called for by Fed.R.Civ.P. 1, if responsibility is exercised by all participants. Absence of such exercise cannot properly be rewarded at the expense of others.

### III

■ Granting counsel a lien on any settlement or judgment does not interfere directly with ongoing steps in a litigation as does a lien on case files (discussed in part IV below), but can nevertheless have adverse impact on the client. Such a lien may prevent a plaintiff from obtaining any proceeds until a potentially lengthy legal fee dispute is fully adjudicated. Courts should be mindful of the rights of members of the Bar to recompense for their efforts but also of the need to protect lay citizens from oppressive behavior. See generally Stone, "The Public Influence of the Bar," 48 Harv.L.Rev. 1 (1934).

Summary judgment was granted in the present case in favor of six (6) defendants by means of adoption of a detailed Report and Recommendation by a United States Magistrate Judge which effectively demonstrated the lack of merit of those claims. A large proportion of the litigation expenses incurred on behalf of plaintiff to date were necessarily incurred in connection with the unsuccessful attempt to pursue those six defendants. Relatively little cost would have been incurred to

date in pursuing the alleged direct wrongdoer (Ryan), who did not engage in the complex motion practice which doubtless generated most of the expense incurred by plaintiff to date.

To grant Shaw a charge against any recovery from Ryan based on the unsuccessful claims pursued by counsel on plaintiff's behalf against the other six defendants would reward the irresponsible practice of suing almost anyone with any connection to an incident whether or not there is articulated a reasonable legal basis for so doing.[4] Such encouragement would run counter to the goals of Fed.R.Civ.P. 1 (the "just, speedy and inexpensive" determination of every action). The 1993 amendments to Rule 1 direct that all Civil Rules be "administered" as well as "construed" to seek that objective.

One of the original objectives of the 1983 amendments to Fed.R.Civ.P. 11 was to discourage scattergun lawsuits seeking to rope in all possible defendants however remotely involved in an event. The later 1993 amendments to Rule 11 and *Stern v. Leucadia National Corp.*, 844 F.2d 997, 1005–06 (2d Cir.1988), discourage imposition of monetary and other sanctions under the Rule where conduct does not "reach the point of clear abuse ..." See also *Riddick v. Summit House*, 835 F.Supp. 137, 146–47 (S.D.N.Y. 1993).

■ A response to shotgun inclusion of remote parties in litigation, which is perhaps far more appropriate than consideration of formal sanctions, is to insure that it does not benefit those engaging in the practice. Here, the unnecessary pursuit of defendants with a marginal connection to the event necessarily rests on counsel's judgment and cannot be laid at the feet of a lay litigant. Even if a client seeks to insist on questionable contentions in a lawsuit, an attorney has the professional obligation to the client, the court and the adversaries to insure that only appropriate steps are taken.

---

**4.** Such conduct is far more harmful to the administration of justice than the also-debatable procedure of adding individual natural person defendants where a fully solvent institutional entity is undisputedly responsible for any harm done to the adversary. For discussion, see *Archer v. Globe Motorists Supply Co*, 833 F.Supp. 211 (S.D.N.Y.1993).

Shaw chose to pursue what in substance were two separate lawsuits under the same caption. The case against Ryan has required little legal expenditure to date and is still pending. The more intensively litigated case requiring greater expense was pursued against six (6) peripheral defendants who have obtained summary judgments in their favor, and quite possibly were pursued because some had potentially deeper pockets. Treating these two prongs of the case as separate suits protects the natural person plaintiff here from being required to pay for the unsupported high-stakes gamble chosen by counsel.[5]

The problem with the gamble, of course, is that Shaw was not the only one putting up the stakes: involuntary stakes belonging to others, including the plaintiff and the defendants now released from the case, were on the table. The plaintiff, whose position would be affected by Shaw's application if successful, is a natural person without known prior background concerning legal matters or litigation,[6] and who necessarily acted on Shaw's advice.[7] Courts are necessarily vigilant to avoid the appearance or reality of overreaching in such situations involving an uneven gradient of knowledge and decision-making role.[8]

Shaw may pursue his request for a lien on any settlement or judgment in this case only by filing sufficient evidence to separate any costs or fees incurred solely or primarily in connection with claims against Ryan.

## IV

■ Apart from the problems raised by Shaw's request for a lien on any settlement or judgment in favor of plaintiff in her suit against Ryan, further difficulties are presented by Shaw's request for a lien on plaintiff's case files. In one sense this application is premature and may properly be denied as moot because Shaw has not been released as counsel at this juncture. On the other hand, efforts to secure other counsel for plaintiff are likely to be chilled if new counsel would be likely to have to await resolution of a fee dispute between Shaw and plaintiff before being able to obtain Shaw's files concerning plaintiff's case.

Applications for liens on case files until a legal fee dispute is resolved have been denied where such action has a potential for substantially delaying litigation, contrary to the goals set forth in Fed.R.Civ.P. 1. See *Misek–Falkoff v. IBM*, 829 F.Supp. 660, 663–64 (S.D.N.Y.1993).

Neither an unsigned motion nor timing of such a motion to coincide with dismissal of all but one defendant from the case tend to suggest that the attorney's claim against the client has sufficient merit to overcome the adverse impact on plaintiff's remaining claims against Ryan, particularly after counsel's delay as discussed above.

## V

■ A motion for reargument or for additional time to move for reargument should describe at least some potential grounds for reconsideration of the original decision. This has not been done.

Local Civil Rule 3(j) provides:

*Swarb v. Lennox*, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972).

---

5. In other fields, as in patent infringement suits, reality prevails over labels. Where an innovation is the functional "equivalent" of an advance in the art, it is recognized as a legal equivalent as well. See, e.g., *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); *Slimfold Mfg. Co. v. Kinkead*, 932 F.2d 1453 (Fed.Cir.1991); Wegner, "The Doctrine of Equivalents After London," 74 J Pat & Trademark Off Socy No 1 at 5 (Jan 1992).

6. See, by way of analogy, the legitimacy of cognovit judgments between, but generally only between, equally legally knowledgeable business entities. See *D.H. Overmyer Co. v. Frick*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972);

7. Legal claims by a giver of advice against one who followed that advice, where the claims grow out of untoward results which ensue are not favored absent special circumstances, which are hardly suggested here. See *In re Thomson McKinnon*, 151 B.R. 324 (S.D.N.Y.1993).

8. The attorney-client relationship in such situations is akin to that involving other fiduciary relationships, e.g., between a collective bargaining agent and employees it represents. See *Steele v. Louisville & Nashville RR*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) (Stone, CJ).

A notice of motion for reargument shall be served within ten (10) days after the docketing of the court's determination ... There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.

The short ten (10) day time timetable set forth under Fed.R.Civ.P. 59 and Local Civil Rule 3(j) exists to avoid excessive prolongation of litigation. While an extension can be granted for cause, none is shown here—other than Shaw's controversy with his client, revealed for the first time after the motions of several defendants for summary judgment were granted.

## VI

Shaw asks for a stay of further proceedings pending plaintiff's selection of new counsel or election to proceed *pro se*. Shaw's application to withdraw at this time, the major predicate for this motion, has been denied. Moreover, the remaining defendant (Ryan) might be prejudiced by further delay. If new counsel for plaintiff seeks to appear, and requests a reasonable adjournment, it may be considered based on the circumstances as they then exist.

SO ORDERED.