Randy SCHEINER, Royce Scheiner, Cindy Royce Creations, Inc. and Maximus Creations Limited, Plaintiffs,

v.

Derek WALLACE, Brian Daniels, Paul Hunt, and David Williams, sued on their own behalf and on behalf of all other Lloyd's Underwriters subscribing to Policy Numbers ZJB8901346 251NM and ZJB900233 255M, White, Fleischner, Fino & Wade, Dennis Wade, Holmes Protection of New York, Inc., Hartley Cooper Associates, Ltd., Levmore–Finch, Inc., Graham Miller, Inc., Shaun Coyne, Karl Alizade, City Safe, Inc. and J.M. McNicholas, Defendants.

No. 93 Civ. 0062 (RWS).

United States District Court, S.D. New York.

Aug. 16, 1994.

Lapidus & Frankel, P.A., Miami, FL by Robert P. Frankel, of counsel, Hein Hazelberg, New York City, for plaintiffs.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City by Michael C. Silberberg, of counsel, for defendants Derek Wallace, Brian Daniels, Paul Hunt, David Williams, Lloyd's Underwriters, White, Fleischner, Fino & Wade, Graham Miller, Inc., Shaun Coyne, Karl Alizade, City Safe, Inc. and John M. McNicholas.

Mangone & Schnapp, New York City, for defendant Holmes Protection.

Nourse & Bowles, New York City by Peter Torben Jensen, of counsel, for defendant Hartley Cooper Associates, Ltd.

## OPINION

SWEET, District Judge.

Defendants Derek Wallace, Brian Daniels, Paul Hunt, David Williams, Lloyd's Underwriters Subscribing to Policy Numbers ZJB8901346 251NM and ZJB900233 255M ("Lloyd's"), White, Fleischner, Fino & Wade ("WFFW"), Holmes Protection of New York, Inc. ("Holmes"), Graham Miller, Inc. ("Miller"), Shaun Coyne, Karl Alizade, City Safe, Inc. ("City Safe") and Detective John M. McNicholas ("McNicholas") (collectively the "Defendants") have moved, pursuant to Rule 12(b), Fed.R.Civ.P., for an order dismissing the Complaint of Randy Scheiner, Royce Scheiner, Cindy Royce Creations, Inc. ("Cindy Royce"), and Maximus Creations Limited ("Maximus") (collectively the "Plaintiffs"). Defendant Hartley Cooper Associates, Limited ("Hartley Cooper") has moved separately, pursuant to Rule 12(b)(6), for an order dismissing all claims against it based upon the collateral effect of the prior proceedings in this action.

The Defendants and Hartley Cooper further seek Rule 11 sanctions, pursuant to Fed.R.Civ.P. 11, against the Plaintiffs.

For the reasons set forth below, the Defendants' motion to dismiss the Plaintiffs' federal RICO claim with prejudice is granted. The remaining motions to dismiss are temporarily stayed in conformance with the findings set forth below. Defendants' motions for sanctions are denied.

### The Parties

Plaintiff Cindy Royce is a New York corporation. Its principal office is in New York City and its primary business is the manufacture and sales of jewelry.

Plaintiff Maximus is a New York corporation. Its principal office is in New York City and its primary business is the manufacture and sales of jewelry.

Samuel Scheiner was and is Secretary/Treasurer and fifty-percent shareholder of Cindy Royce and Secretary/Treasurer and one-third owner of Maximus. Samuel Scheiner supervised the overall operations and finances of both Cindy Royce and Maximus.

Randy Scheiner is a New York citizen and resident residing in Cedarhurst, New York. He was a salesman for Maximus. He is the son of Samuel Scheiner and Plaintiff Royce Scheiner, the wife of Samuel Scheiner.

Derek Wallace, Brian Daniels, Paul Hunt and David Williams are citizens of the United Kingdom, with their principal place of business in London. As Lloyd's underwriters, they subscribed to the insurance policies in this case.

WFFW, a law firm, is a general partnership organized and existing under the laws of

the State of New York. Attorneys in WFFW are licensed to practice law in the State of New York. Dennis Wade is a partner in WFFW. Dennis Wade worked first as an Assistant District Attorney and second as Deputy Chief of the Rackets Bureau in the New York County District Attorney's Office.

Holmes is a corporation organized and existing under the laws of New York. Cindy Royce and Maximus contracted Holmes to provide security services.

Hartley Cooper, an insurance brokerage, is an English Corporation with its principal place of business in England. Hartley Cooper acted as a "placing broker" by placing primary and excess insurance policies for Cindy Royce and Maximus on the London market.

Levmore–Finch, an insurance brokerage, is a New York corporation with its principal place of business in New York City.

Miller is an adjustment firm retained by Lloyd's. Shaun Coyne is a loss adjuster at Miller.

City Safe, a New Jersey corporation, has its principal place of business in New Jersey and New York. The firm provides safe expertise for Lloyd's. Karl Alizade is a principal of City Safe.

Detective McNicholas, formerly with the New York City Police Department, helped investigate the reported burglary of Cindy Royce and Maximus.

### Prior Proceedings

The prior proceedings and facts in this diversity action are set forth in the previous opinion of this Court, familiarity with which is presumed. *See Scheiner v. Wallace,* 832 F.Supp. 687 (S.D.N.Y.1993) (*Scheiner I* or the "Opinion"). A brief review of the pertinent facts and prior proceedings follow.

On January 5, 1989, underwriters from Lloyd's issued to Cindy Royce and Maximus Jewelers' Block Policy No. ZJB8901346 251NM which insured their premises for the 12 month period beginning July 10, 1989 against loss by theft up to a maximum of $2,500,000, with a $25,000 deductible. On February 9, 1989, Plaintiffs took out an additional "excess policy" for losses in excess of $2,500,000.

On August 18, 1989, while both policies were still in effect, the premises of Cindy Royce and Maximus were burglarized. On November 2, 1989, Samuel Scheiner, in his capacity as Secretary/Treasurer for Cindy Royce and Maximus, filed a Proof of Loss with Lloyd's for more than $5 million which was rejected by Lloyd's on December 19, 1989.

On February 7, 1990, Cindy Royce and Maximus filed a law suit in London against Lloyd's for breach of contract (the "English Action"). In defense, Lloyd's alleged: (1) an employee or a principal of Cindy Royce and Maximus was dishonestly involved in the burglary, which entitled the Underwriters to refuse to make payment under the false swearing clause; (2) the Underwriters were entitled to reject the Proof of Loss because there was no burglary; the outer vault door was "torched" while in the open position and other physical evidence reasonably indicated that the theft was staged and perpetrated by someone on the inside with access to the premises, alarm system, safe and vault combinations; (3) Samuel Scheiner, a principal of Cindy Royce and Maximus, was fraudulently involved with the burglary; (4) Cindy Royce and Maximus breached the policies by failing to properly maintain a detailed and itemized inventory of their property; (5) Cindy Royce and Maximus fraudulently inflated the amount of their claim; (6) Cindy Royce and Maximus breached a condition of their policies by keeping inadequate records; and (7) Cindy Royce and Maximus committed a variety of breaches of warranty, misrepresentations and nondisclosures, which entitled the Underwriters to avoid their policies.

The English action began on April 23, 1991. The English judge, Justice Waller, travelled to New York, visited the premises, the vault and safe. On October 2, 1991, the thirtieth day of trial, the Plaintiffs asked for a discontinuance on terms that they would not bring other proceedings elsewhere and that the court should order costs accordingly. Justice Waller denied their application for discontinuance. The next day, the Plaintiffs abandoned their claims and Justice Waller

entered a dismissal in favor of the Defendants. The Plaintiffs later lost their appeal of the denial of discontinuance in the English Court of Appeal.

On March 25, 1992, Samuel Scheiner, Morton Gold, Daniel Squillante, Benoit Dreyfus, Randy Scheiner, Cindy Royce, and Maximus were indicted by the Grand Jury of the County of New York on three counts: (1) Conspiracy in the Fourth Degree, in violation of Penal Law § 105.10(1); (2) Insurance Fraud in the First Degree, in violation of Penal Law § 176.30; and (3) Attempted Grand Larceny in the First Degree, in violation of Penal Law §§ 110.00, 155.42.

In a plea agreement entered into on October 16, 1992, all charges against the Plaintiffs—Randy Scheiner, Cindy Royce and Maximus—were dismissed. At the same time, Samuel Scheiner, Morton Gold and Daniel Squillante pled guilty to Attempted Grand Larceny in the Fourth Degree, which the Plaintiffs claim merely represents an admission to the inflation of their insurance claim by an amount between one and three thousand dollars.

Also in 1992, Cindy Royce and Maximus filed suit in the Southern District of New York against their English counsel, Simmons & Simmons. On July 27, 1993, the Honorable Robert P. Patterson granted Simmons & Simmons' motion for summary judgment against Cindy Royce and Maximus' claims of professional malpractice, breach of contract, and violation of New York Judiciary Law § 487 and denied summary judgment on their claims of unjust enrichment. Judge Patterson also granted Simmons & Simmons' motion to dismiss pursuant to the doctrine of *forum non conveniens.*

On January 6, 1993, Plaintiffs Randy Scheiner, Royce Scheiner, Cindy Royce and Maximus filed their first Complaint in this action against the Defendants. The Complaint alleged the following: (1) Lloyd's breached its contract for both the primary and excess policies; (2) Lloyd's practiced deceptive business policies and acts proscribed by New York General Business Law of New York § 349; (3) Defendants maliciously prosecuted Randy Scheiner, Cindy Royce and Maximus for their personal unjust enrichment and benefit; (4) Defendants intentionally inflicted emotional distress upon Randy Scheiner; (5) Defendants intentionally inflicted emotional distress upon Royce Scheiner; (6) Defendants initiated a criminal investigation of Randy Scheiner, Cindy Royce and Maximus constituting an abuse of process; (7) Defendants violated the federal RICO statute; (8) Defendants Hartley Cooper and Levmore–Finch committed acts of negligence and malpractice by failing to perform their brokerage services according to generally accepted principles; (9) Defendant Holmes breached its contract to protect the Plaintiffs' premises because other premises they protected were burglarized; (10) Defendant Holmes defrauded Cindy Royce and Maximus by failing to provided contracted and paid for security devices; and (11) Defendants violated Cindy Royce's and Maximus' civil rights under § 1983 by conspiring to commit perjury and tampering with evidence in order to prevent Cindy Royce and Maximus from presenting truthful witnesses.

On March 9, 1993,[1] the collective Defendants filed a motion for summary judgment, on the grounds of *res judicata* and/or collateral estoppel, as to all asserted claims or, in the alternative, a motion to dismiss all asserted claims for failure to state a claim and failure to plead two of the claims sounding in fraud, and requesting an order requiring Plaintiffs to post a security bond for $250,-000. On May 14, 1993, Defendants Hartley Cooper filed a separate motion for summary judgment as to all claims asserted against it on the grounds of collateral estoppel, or in the alternative, an order dismissing all claims against Hartley Cooper for lack of pendent jurisdiction. Defendant Levmore–Finch did not answer or file motions to dismiss in this action.

In *Scheiner I,* this Court held: (1) the English Action did not reach a final judgment on the merits which could be pleaded as *res judicata;* (2) the English Action did,

---

1. Defendant Holmes joined the motion to dismiss filed originally by the Lloyd's, WFFW, Dennis Wade, Graham Miller, Shaun Coyne, Karl Alizade, City Safe Inc. and Detective McNicholas on April 12, 1993. Hartley Cooper filed a separate motion on June 16, 1993.

however, collaterally estop the Plaintiffs from pursuing their breach of contract claim; (3) the guilty pleas of the insureds' principals to attempted grand larceny in the Fourth Degree does not bar civil litigation; (4) the Plaintiffs' failed to state federal RICO and civil rights claims; and (5) as a result, the remaining state based claims were dismissed for lack of jurisdiction. Accordingly, the Complaint was dismissed with leave to replead.

On March 7, 1994, the Clerk of the Court entered a judgment of dismissal and closed this case. On March 17, the Plaintiffs moved to vacate the judgment and filed their Amended Complaint[2] on April 11, 1994. Three days later, the Plaintiffs' motion to vacate the judgment of dismissal was granted, over opposition, and this action was reinstated.

The Defendants initiated the filing of their motions to dismiss the Amended Complaint on June 1, 1994 and for Rule 11 sanctions on June 30, 1994. Oral argument on the motions were consolidated and heard by the Court on July 20, 1994. Supplemental affidavits and submissions were received by the Court through August 1, 1994, at which time the motions were considered fully submitted.

### Discussion

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in their favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations considered here are taken from the Plaintiffs' Amended Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motions.

Rule 12(b)(6) also imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (quoted in *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 250, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989)).

### I. *RICO*

■ As set forth in detail in *Scheiner I,* to sustain a RICO claim, a plaintiff must allege that the defendants committed two or more predicate acts which constitute a "pattern" of "racketeering activities" that directly or indirectly invests, maintains or participates in an enterprise affecting interstate commerce. *Scheiner I,* 832 F.Supp. at 699 (citations omitted).

In *Scheiner I,* the Court dismissed the Plaintiffs' initial RICO allegations that "[a]t best ... center around a business dispute involving a breach of contract." *Scheiner I,* 832 F.Supp. at 702. Specifically, the Court held that the Plaintiffs inadequately pleaded predicate acts with any "taint of illegality," that Plaintiffs' mail and wire fraud claims failed to "articulate a single fraudulent statement that was allegedly transmitted or received," and that the Defendants' acts did not constitute a pattern of racketeering activity entailing the requisite "indictable criminal conduct." *Id.* at 699–702.

■ Plaintiffs' Amended Complaint fails to cure the pleading deficiencies identified in *Scheiner I.* The Amended Complaint alleges that the "association-in-fact" between the Defendants constitutes a RICO enterprise within the meaning of 18 U.S.C. § 1961(4) which allegedly made a series of payments to

---

**2.** The Amended Complaint includes the following ten claims against the Defendants: (1) deceptive business practices, in violation of New York General Business Law § 349; (2) malicious prosecution; (3) intentional infliction of emotional distress upon Randy Scheiner; (4) intentional infliction of emotional distress upon Royce Scheiner; (5) abuse of process; (6) civil rights violation, pursuant to 42 U.S.C. § 1983; (7) Racketeer Influenced and Corrupt Organization Act violations, pursuant to 18 U.S.C. §§ 1961–68; (8) negligence and malpractice of Hartley Cooper, John Finch and Levmore–Finch, Inc.; (9) breach of contract by Holmes; and (10) fraud by Holmes.

WFFW, Homes, Miller, Coyne, Alizade, City Safe and McNicholas. (Am.Compl. ¶ 98.) As no facts are alleged demonstrating that such payments are illegal they are accordingly presumed not to be alleged by the Plaintiffs as predicate acts within the meaning of the RICO statute.

■ As the basis for their RICO allegations, the Plaintiffs appear to only allege that the Defendants engaged in "two or more predicate acts of mail and/or wire fraud" in violation of 18 U.S.C. §§ 1341, 1343 (Am. Compl. ¶¶ 100, 108).[3] The interstate communications listed are letters and telephone calls between Wade and Wallis (presumably Derek Wallace) and Wade and City Safe or Alizade, presumably compiled from WFFW's billing records:

> 9/1/89 Letter from Dennis Wade to Mr. Wallis.
>
> 10/25/89 Telephone conference between Dennis Wade and Mr. Derek Wallis.
>
> 11/1/89 Receipt and review of proof of loss.
>
> 11/2/89 Telephone conference between Dennis Wade and Mr. Derek Wallis (decision not to pay claim?).
>
> 11/30/89 Telephone conference between Dennis Wade and Mr. Derek Wallis.
>
> 4/10/90 Telephone conference between Dennis Wade and City Safe.
>
> 6/12/90 Receipt and review by Dennis Wade of Alizade statement.
>
> 3/25/91 Telephone conference between Dennis Wade and City Safe.
>
> 4/3/91 Receipt and review of fax of Karl Alizade's report by CLM.

(Am.Compl. ¶ 109.)

Mail fraud, as defined in § 1341, provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses representation or promises ... places in any post office or authorized depository for mail matter ... shall be fined....

18 U.S.C. § 1341. The wire fraud statute is essentially similar in nature. *Cf.* 18 U.S.C. § 1343.

■ Accordingly, to plead predicate acts of mail or wire fraud, a plaintiff must allege that the defendant(s): (1) devised a scheme to defraud; (2) used the United States mails or interstate wires to further that fraudulent scheme; and (3) did so with the specific intent to defraud. *United States v. Wallach,* 935 F.2d 445, 461 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993).

Furthermore, where allegations of mail and wire fraud are pleaded as predicate acts in a RICO claim, it is well settled that such pleading must satisfy the particularity requirements of Rule 9(b), Fed.R.Civ.P. *See Zaro Licensing, Inc. v. Cinmar Inc.,* 779 F.Supp. 276, 280 (S.D.N.Y.1991) (citing cases). Specifically, "[a]llegations of fraud must therefore specify the fraudulent statement, the time, place, speaker and content of the alleged misrepresentations, and factual circumstances giving rise to a strong inference that the defendant had the requisite fraudulent intent. *Id.* at 281 (citations omitted). Finally, "[p]laintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992).

---

**3.** Although unstated in the Amended Complaint, the Plaintiffs also appear to assert violations of "§ 190.25(4) of the New York State Penal Code [sic]" by Faust, Heyman and WFFW. (*See* Am. Compl. ¶ 101.) Presumably, the Plaintiffs mean § 190.25(4)(a) of the New York Criminal Procedure law which discusses the secrecy of the Grand Jury process. However, even if the Plaintiffs had adequately alleged a violation of § 190.-25(4)(a), that section of the New York Criminal Procedure Law may not be considered a "racketeering act." Section 1961(1)(A) of the RICO statutes limits those state crimes which may be considered operable predicate acts to include: "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C.A. § 1961(1)(A) (West Supp.1994); *cf. Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York,* 808 F.Supp. 213, 232 (S.D.N.Y.1992) (New York's "coercion" statute does not provide basis for liability under RICO).

Plaintiffs fail to describe the content of the nine communications enumerated in paragraph 109 of their Amended Complaint, much less specify the fraudulent content of such communications. The fact that the Defendants communicated amongst themselves about something hardly constitutes mail fraud within the meaning of § 1341 and certainly fails the particularity standards required by Rule 9(b). *Cf. McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992).

In the absence of viable allegations concerning the contents of the purported mail and wire fraud, or any justifiable reliance thereupon, the Plaintiffs' RICO claims still fail to articulate any predicate acts upon which liability may attach. Accordingly, the Plaintiffs' RICO claims are dismissed with prejudice.

## II. *Plaintiffs Fail to Adequately Allege Civil Rights Violations*

■ In their Amended Complaint, the Plaintiffs now allege that the Defendants conspired with the New York County Assistant District Attorneys Randy Faust[4] ("Faust") and Anne Heyman ("Heyman") to "suppress" relevant "evidence" and "testimony" concerning the investigation of the crimi-

nal action in violation of their federal civil rights, 42 U.S.C. § 1983.[5] (Am.Compl. ¶¶ 83–86). In support of this contention, the Plaintiffs list as many as 74 contacts from December 2, 1990 through September 19, 1991 between members of the WFFW law firm and Assistant District Attorneys Heyman and Faust, apparently gleaned from the billing records of WFFW. (Am.Compl. ¶¶ 81, 86, 88.) In short, the Plaintiffs contend that the District Attorney's office unlawfully disclosed secret Grand Jury evidence to the Defendants in violation of New York Criminal Procedure Law § 190.-25(4)(a)[6] and New York Penal Law § 215.-70.[7]

Moreover, the District Attorney's office[8] is accused of "conceal[ing] any evidence which would show that the defendants were committing perjury." (Am.Compl. ¶ 84.) In support of this contention, the Plaintiffs point to 22 allegedly missing letters between WFFW and the District Attorney's office (Hazenberg Aff. and letter of July 13, 1994) which apparently remain in the custody of the District Attorney's office, as well as the District Attorney's summary of the Grand Jury proceedings ordered to be turned over to the Plaintiffs by the Honorable Justice Leslie

4. Subsequent to the investigation and indictment of Samuel Scheiner, Randy Scheiner, Cindy Royce and Maximus, Faust joined the White, Fleischner, Fino & Wade law firm. (Am.Compl. ¶ 48.)

5. To the extent that the Amended Complaint refers to the English proceedings, (*see, e.g.,* Am. Compl. ¶ 85, 88, 89) these allegations are collaterally estopped from being raised in the Amended Complaint. *See Scheiner I,* 832 F.Supp. at 702–03.

6. New York Criminal Procedure Law § 190.-25(4)(a) provides in relevant part:

Grand jury proceedings are secret, and no ... person ... may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding. For the purpose of assisting the grand jury in conducting its investigation, evidence obtained by a grand jury may be independently examined by the district attorney, members of his staff, police officers specifically assigned to the investigation, and such other persons as the court may specifically authorize. Such evidence may not be dis-

closed to other persons without a court order. Nothing contained herein shall prohibit a witness from disclosing his own testimony.

7. New York Penal Law § 215.70 provides in relevant part:

"A person is guilty of unlawful grand jury disclosure when, being a ... public prosecutor ... in or about a grand jury room or proceeding ... he intentionally discloses to another the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding which is required by law to be kept secret, except in the proper discharge of his official duties or upon written order of the court. Nothing contained herein shall prohibit a witness from disclosing his own testimony.

8. Public prosecutors are "absolutely immune from suit for malicious prosecution," *see Imbler v. Pachtman,* 424 U.S. 409, 437, 96 S.Ct. 984, 998, 47 L.Ed.2d 128 (1976) and accordingly, § 1983 liability may not attach, nor is it alleged, against the Manhattan District Attorney's office. *See generally White v. Frank,* 855 F.2d 956 (2d Cir.1988) (exhaustive discussion of history of malicious prosecution and § 1983 liability).

Croker Snyder on March 11, 1994 (*See* Snyder Decision; Am.Compl.Ex.W.). On June 23, 1994, Dan Castleman, the Bureau Chief of the Investigations Divisions at the New York County District Attorney's office purportedly informed the Plaintiffs that the Grand Jury summary, the "disappearing" letters and other evidence would only be available at some point in September 1994. (Hazenberg Aff. ¶¶ 1–9.)

Finally, the Amended Complaint states that "another purpose of the conspiracy was to tamper with evidence gathered under the color of law to improperly obtain indictments against the plaintiffs." (*See* Am.Compl. ¶ 90; *see also* Am.Compl. ¶ 78 (incorporating malicious prosecution claim by reference).) Accordingly, the Plaintiffs' § 1983 claim is predicated upon the claim of the malicious prosecution of Randy Scheiner, Cindy Royce and Maximus, against whom all criminal charges were dismissed.[9]

> Section 1983 provides, in relevant part: [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution an laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

■ Section 1983 liability attaches where there is criminal liability, such as a malicious prosecution claim. However, such liability does not extend to civil, or abuse of process, cases. *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.) (holding "[w]hile section 1983 liability may be predicated on a claim for malicious prosecution, it may not be predicated on a claim for malicious abuse of process") (citations omitted) ("*Spear*"), *cert. denied,* —— U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *see White v. Frank,* 855 F.2d 956, 961 n. 5 (2d Cir.1988) ("There can

be no question that malicious prosecution can form the basis for imposition of liability under section 1983.") (citing cases).

■ A private defendant may be held liable under § 1983 if he or she is "a willful participant in joint activity with the State or its agent[s]." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970) (quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966)). In other words, the complaint must allege sufficient facts demonstrating that the private entity acted in concert with the State actor to commit an unconstitutional or unlawful act. *Spear,* 954 F.2d 63, 68 (2d Cir.1992). Plaintiffs bear the burden of proof to establish that the acts of private entities constitute state action for the purposes of § 1983. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1082–83 n. 3 (2d Cir.1990), *cert. denied,* 499 U.S. 960, 111 S.Ct. 1583, 113 L.Ed.2d 648 (1991).

■ There are two tests for determining whether a private entity has engaged in sufficient state action to trigger § 1983 liability: first, the symbiotic relationship test and second, the close nexus test. *Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1081–82 (2d Cir.1990), *cert. denied,* 499 U.S. 960, 111 S.Ct. 1583, 113 L.Ed.2d 648 (1991). "While the symbiotic relationship test focuses on the state's overall relationship with the private actor, the close nexus test specifically examines the state's link to the challenged action." *Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1082 (2d Cir.1990) (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477 (1974)).

■ The prototypical symbiotic relationship case occurs when the government has a proprietary interest in the private entity. For example, state action has been found where a private restaurateur, who leased space in a government owned building, denied service to an African–American man.

---

9. A malicious prosecution claim may be brought against a defendant who: (1) institutes criminal proceedings against the plaintiff; (2) with malice; and (3) without probable cause; and (4) where the criminal proceedings terminate in the plaintiffs favor. W. Prosser § 119 at 834 (4th ed. 1971); *White v. Frank,* 855 F.2d 956, 959 n. 2 (2d Cir.1988).

See *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 861–62, 6 L.Ed.2d 45 (1961). There, the Supreme Court found state action since the state owned and paid the maintenance of the building, owned the adjacent parking lot, derived a direct financial benefit from the restaurants successes and had conferred tax exempt status upon the building. Here, although arguably a symbiotic employment relationship appears to exist between the several former Assistant Manhattan District Attorney and WFFW, the level of interdependence cannot be "recognized as [ ] joint participant[s] in the challenged activity." *Id.* at 725, 81 S.Ct. at 862.

Acts by a private defendant "are deemed state action if 'there is a sufficiently close nexus between the State and the challenged action' that the actions by the private parties 'may be fairly treated as that of the State itself.'" *Chan v. City of New York*, 1 F.3d 96, 106 (2d Cir.1993) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)), *cert. denied,* —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993). The close nexus test is invoked in § 1983 claims against a private defendant "only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (emphasis in original). Second, the close nexus test is triggered if upon reviewing the evidence, it is clear that the State " 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government].'" *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 546, 107 S.Ct. 2971, 2986, 97 L.Ed.2d 427 (1987) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982)). Third, the nexus test may be satisfied where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" *Blum*, 457 U.S. at 1005, 102 S.Ct. at 2786 (quoting *Jackson v. Metropolitan Edison Co.* at 419 U.S. at 353, 95 S.Ct. at 455).

Where allegations that a private defendant has acted in concert with a state actor are couched in conclusory terms, the Courts have denied the § 1983 liability. *See, e.g., Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.1992) (finding one meeting between state actors and private defendant not sufficient to establish liability); *Zemsky v. City of New York*, 821 F.2d 148, 151–52 (2d Cir.) (affirming dismissal of plaintiffs § 1983 action where the "conspiracy claims are so 'vague and unsupported by description of particular overt acts'.") (citations omitted), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987).

Although the Plaintiffs have not provided a substantial amount of evidence in support of their allegations that the Defendants acted "together with or has obtained significant aid from state officials," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982), the circumstantial evidence as alleged causes pause. First, the Plaintiffs have listed 74 separate contacts between the WFFW firm and the Manhattan District Attorney's office in less than a year's time. Second, the employment of Randy Faust, subsequent to the Plaintiffs' prosecution, by WFFW smacks of a level of nepotism that approaches impropriety. In this context, the fact that Manhattan District Attorney's office cannot or will not provide the Court ordered summary of the Grand Jury proceedings for six months augers for caution in dismissing these pleadings as too conclusory.

The Defendants rightly state that there is "nothing 'illegal' about attorneys for an insurer communicating with prosecutors who are investigating a crime." (Defs.' Mem. of Law at 16.) "[A] conclusory allegation that a non state actor conspired with a state actor does not suffice to state a section 1983 violation." *Skinner v. Dwyer*, 91 Civ. 238, 1992 WL 265995, *2, 1992 U.S.Dist. LEXIS 14472 *6 (N.D.N.Y. May 15, 1992) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 68; *Zemsky v. New York*, 821 F.2d 148, 151–52 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987)). However, the cases cited by the Defendants in support of this proposition involved only one or two

contacts between the private entity and the state actors. *Cf. Spear v. Town of West Hartford,* 954 F.2d at 68 (only one contact between city attorney and private defendants); *Doe v. Smith,* 704 F.Supp. 1177, 1189 (S.D.N.Y.1988) (no evidence alluded to that connects private defendants with the district attorney beyond a sole pretrial interview.) What is so disturbing about this case, by contrast, is the sheer intensity of what appears to be nearly continuous contact between WFFW and the District Attorney's office.

A stronger argument in the Defendants favor may be gleaned from the Supreme Court's decision in *National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 196, 109 S.Ct. 454, 464, 102 L.Ed.2d 469 (1988) (*"Tarkanian"*) which held that the National Collegiate Athletic Association (the "NCAA") was not liable under § 1983 for its recommendation of the demotion of the plaintiff basketball coach for various rules violations, actually implemented by the state actor in that case, the University of Las Vegas ("UNLV"). The Court ruled the interests of the NCAA and UNLV clashed throughout the investigation, a far cry from the "interdependent" relationship found in *Burton v. Wilmington Parking Authority.* Further, the NCAA was found to have no governmental powers to "facilitate its investigation" such as "to subpoen[ing] witnesses," issuing "contempt sanctions," or "assert[ing] sovereign authority over any individual." *Id.* at 197, 109 S.Ct. at 464. Rather, the NCAA's only leverage was it's power to expel the university from its membership. As the NCAA did not actually discipline the state employee, the Court concluded that "[i]t would be more appropriate to conclude that UNLV has conducted its athletic program under color of the policies adopted by the NCAA, rather than that those policies were developed and enforced under color of Nevada law." *Id.* at 199, 109 S.Ct. at 466.

Although persuasive, *Tarkanian* is to be distinguished with the case at bar in its current nascent stage. First, far from having adversarial relations, the alleged 74 contacts between WFFW and the District Attorney's office indicates that these parties were working hand in glove towards the Plaintiffs' criminal prosecution. Second, it appears that several of the Defendants worked closely with, and were videotaped during, the actual investigation of the crime scene as well as the removal and storage of the safe. At this stage, evidence has not yet been elicited that would clarify whether the District Attorney's office was acting under color of the Defendants' policies or vice versa.

Accordingly, the motions to dismiss the Plaintiffs' § 1983 claims are stayed until such time as the District Attorney's office provides the Grand Jury summary and either the alleged 22 "disappearing" letters or a sworn affirmation by the District Attorney's office that these documents do not exist. (*See* Wade Aff. ¶ 6 (affirming "*all* correspondence between [WFFW] and the New York District Attorney's Office have been produced."))

On a motion to dismiss, the Plaintiffs must be given the opportunity to show that the Defendants were somehow "acting in concert" with the District Attorney's office in securing the Plaintiffs' allegedly improper indictment. In the absence of the Court ordered discovery material, it is premature to reach the question of whether the Grand Jury had probable cause to indict the Plaintiffs, the first element necessary to sustain their malicious prosecution claim.

Should the evidence provided reveal that the District Attorney's office was merely acting under color of the Defendants' policies, then no State action may be found, pursuant to the ruling of *Tarkanian.* Parenthetically, the prosecutor's office has complete immunity pursuant to *Imbler v. Pachtman,* 424 U.S. 409, 424–31, 96 S.Ct. 984, 992–96, 47 L.Ed.2d 128 (1976). In the event that facts are revealed to support the Plaintiffs' allegations of sufficient state action necessary to sustain their § 1983 claim, this case will be dismissed with prejudice in the absence of a valid federal claim, and the remaining state law claims will be dismissed for lack of jurisdiction, pursuant to the ruling in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

However, should the evidence reveal that the Defendants were acting in concert with

the District Attorney's office, then the motions to dismiss for failure to state a § 1983 claim, predicated upon malicious prosecution, shall be denied and the action will proceed accordingly. In that event, the remainder of the state common law claims, including the collateral estoppel effect of the English action upon the Plaintiffs' claims against Defendant Hartley Cooper, will be addressed.

### III. Sanctions

#### A. The Standards for Imposing Rule 11 Sanctions

█ The familiar prescriptions of Rule 11 were amended, effective December 1, 1993, so that the district court's power to impose sanctions is now considered "discretionary rather than mandatory." *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994); *First Interregional Equity Corp. v. Haughton*, 91 Civ. 0143, 1994 WL 364038 at *4, 1994 U.S.Dist. LEXIS 9477 at *10 (S.D.N.Y. July 12, 1994).

The amended Rule 11, provides, in relevant part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Fed.R.Civ.P. 11.

If the Court determines that Rule 11 has been violated, sanctions may be imposed pursuant to Rule 11(c), which provides for:

(c) Sanctions. If, after a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court *may* . . . impose an appropriate sanction upon the attorneys, law firms, or par-

ties that have violated subdivision (b) or are responsible for the violation.

Fed.R.Civ.P. 11(c) (emphasis added).

The Second Circuit has determined that Rule 11 sanctions should be "imposed with caution." *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994). "[A]ny and all doubts must be resolved in favor of the signer." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985); *see also Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir.1993) ("'[w]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . we have instructed district courts to resolve all doubts in favor of the signer.'") (citations omitted).

As a result, the 1993 amendments to Rule 11 are viewed to "discourage imposition of monetary and other sanctions under the Rule where conduct does not 'reach the point of clear abuse.'" *Fontaine v. Ryan*, 849 F.Supp. 242, 245 (S.D.N.Y.1994) (quoting *Stern v. Leucadia National Corp.*, 844 F.2d 997, 1006 (2d Cir.1988)); *see also Mareno v. Jet Aviation of Am.*, 155 F.R.D. 74, 76 (S.D.N.Y.1994) (1993 amendment "downgrad[ed]" Rule 11 as weapon against litigation abuse).

#### B. The Defendants' Motion For Sanctions Is Denied

The Defendants contend that the Plaintiffs violated the requirements of Rule 11 for three primary reasons: first, for failing to cure their RICO pleading deficiencies; second for failing to cure their § 1983 pleading deficiencies; and third, for allegedly filing the Amended Complaint for the improper purpose of harassing the Defendants.

█ The record before the Court does not support a sanctions determination at this stage. Turning first to the RICO proceedings, dismissed with prejudiced above, it appears that the Plaintiffs attempted to amend their RICO claims in conformance with the direction of *Scheiner I* to plead predicate acts of mail fraud. *Compare Scheiner I*, 832 F.Supp. at 699–702 *with* Am.Compl. ¶¶ 93–110. While this attempt failed for pleading deficiencies, it cannot be said from the record that these deficiencies were so blatant as to

be considered sanctionable conduct. The record also indicates that there is a possible basis for the Plaintiffs' § 1983 claims, hence the temporary stay of this action. Accordingly, it would be inappropriate in any event to levy sanctions regarding this claim.

Finally, as to the Defendants' contention that this law suit is merely filed in order to harass or acquire a nuisance value settlement, it is impossible at this stage to make such a determination, especially in light of the Defendants' and the District Attorney's office reluctance in providing court ordered discoverable materials. Therefore, the Defendants' motion for sanctions must be denied at this time.

### Conclusion

Plaintiffs' federal RICO claim in this action is dismissed with prejudice. Defendants' motions to dismiss the Plaintiffs' remaining federal claim, pursuant to § 1983, and pendent state law claims, are stayed pursuant to the findings set forth above. The Defendants' motions to impose sanctions, pursuant to Rule 11, Fed.R.Civ.P., are denied at this time.

It is so ordered.